## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

JEROME COAST, JR.,                :
                                  :
              Plaintiff,          :
                                  :
v.                                :        Case No. 5:24-cv-309-MTT-AGH
                                  :
DEPARTMENT OF                     :
CORRECTION, *et al.*,             :
                                  :
              Defendants.         :
_____ :

## ORDER AND RECOMMENDATION

In accordance with the Court's previous orders and instructions, *pro se* Plaintiff Jerome Coast, Jr., an inmate presently incarcerated in the Georgia Diagnostic and Classification Prison in Jackson, Georgia, filed a Recast Complaint (ECF No. 8) and a renewed motion for leave to proceed *in forma pauperis* ("IFP") (ECF No. 9). Plaintiff also filed a motion for appointed counsel (ECF No. 12). Plaintiff's renewed motion to proceed IFP demonstrates that he had a zero balance and could not have paid the required initial partial filing fee at the time he filed the motion. Renewed Mot. to Proceed IFP 1, ECF No. 9-1. In addition, Plaintiff appears to contend that he repeatedly submitted his forms to prison officials and had enough money in his account in December to pay the fee, but prison officials still have not deducted the funds from his account. Letter 1, ECF No. 10. Because it appears the failure to pay the initial partial filing fee cannot be attributed to Plaintiff, his renewed motion to proceed IFP (ECF No. 9) is **GRANTED**, and the Court will waive payment of the

initial partial filing fee prior to further processing of this case. Plaintiff, however, is still responsible for paying the remaining balance of the entire $350.00 filing fee in installments, as set forth in 28 U.S.C. § 1915(b), and Plaintiff's custodian is authorized to remit those installments to the Clerk of Court as previously ordered. *See generally* Order, Oct. 31, 2024, ECF No. 7.

Plaintiff's claims are now ripe for preliminary screening pursuant to 28 U.S.C. § 1915A and § 1915(e). The Court finds that Plaintiff's claims that Defendants Calhoun and Asanie used excessive force against him and were deliberately indifferent to his serious medical needs following the excessive force incident may proceed for further factual development.[1] It is **RECOMMENDED,** however, that his remaining claims be **DISMISSED without prejudice.** Plaintiff's motion for appointed counsel (ECF No. 12) is **DENIED.**

## MOTION FOR APPOINTED COUNSEL

Plaintiff seeks appointed counsel. "Appointment of counsel in a civil case is not a constitutional right." *Fowler v. Jones*, 899 F.2d 1088, 1096 (11th Cir. 1990). "A court's appointment of counsel in a civil case is warranted only in exceptional circumstances, and whether such circumstances exist is committed to the district court's discretion." *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013) (citing *Steele v. Shah*, 87 F.3d 1266, 1271 (11th Cir. 1996)). Exceptional circumstances justifying appointment of counsel exist "where the facts and legal

---

[1] Plaintiff spells this Defendant's name in more than one way in his pleadings, but he most often spells it "Asanie." The Court has therefore adopted this spelling in this Order and Recommendation.

issues are so novel or complex as to require the assistance of a trained practitioner." *Fowler*, 899 F.2d at 1096. "The key is whether the *pro se* litigant needs help in presenting the essential merits of his or her position to the court." *Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993).

Plaintiff's case does not present exceptional circumstances. Plaintiff set forth the essential factual allegations underlying his claims and the applicable legal doctrines are readily apparent. As such, Plaintiff's motion for appointment of counsel (ECF No. 12) is **DENIED**. Should it later become apparent that legal assistance is required to avoid prejudice to Plaintiff's rights, the Court, **on its own motion**, will consider assisting him in securing legal counsel at that time. Consequently, there is no need for Plaintiff to file additional requests for counsel.[2]

### PRELIMINARY SCREENING OF PLAINTIFF'S COMPLAINT

## I.    Standard of Review

Courts must conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. *See* 28 U.S.C. § 1915A(a). Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP. Both statutes apply in this case, and the standard of review is the same. *Pro se* pleadings are held "to a less stringent standard than a pleading drafted by an attorney; a pro se pleading is liberally construed." *Danglar v.*

---

[2] The federal *in forma pauperis* statute authorizes courts to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). The statute does not, however, provide any funding to pay counsel for their representation or authorize courts to compel counsel to represent an indigent party in a civil action. *See Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 310 (1989); *Taylor v. Pekerol*, 760 F. App'x 647, 651 (11th Cir. 2019) (stating that a district court has no "inherent power" to compel counsel to represent a civil litigant and § 1915 provides no such authority).

*Dep't of Corr.*, 50 F.4th 54, 56 n.4 (11th Cir. 2022) (quoting *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015)).   Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."   28 U.S.C. §1915A(b); *see also* 28 U.S.C. § 1915(e).

A claim is frivolous if it "lacks an arguable basis either in law or in fact."   *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted). The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless."   *Id.* (internal quotation marks omitted).   A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim.   *Twombly*, 550 U.S. at 556.   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law.   *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).   If a litigant cannot satisfy these requirements

or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

## II. Factual Allegations

The claims in the First Recast Complaint arise from Plaintiff's incarceration at the Georgia Diagnostic and Classification Unit in Jackson, Georgia.[3]  1st Recast Compl. 2, ECF No. 8.  On August 15, 2024, Plaintiff states he "was beating on the door trying to get the guards to take [him] to the kiosk to check [his] account because [he] believed the guard the day befor[e] had gave [his] store order to another inmate." *Id.* at 3.  Defendants Calhoun and Asanie, members of the CERT team, responded and asked Plaintiff why he was banging on the door.  *Id.*  When Plaintiff explained he needed to visit the kiosk, Defendant Calhoun told Plaintiff "no . . . because [Plaintiff] was beating on the door."  *Id.*  Plaintiff told Defendants Calhoun and Asanie that "they was all in cahoots and they knew the dude gave [Plaintiff's] order away," and he "started beating on the door again."  *Id.*  Defendants Calhoun and Asanie again told Plaintiff to stop, and Plaintiff "told them to take [him] to kiosk & [he] would stop."  *Id.*  Defendants Calhoun and Asanie "walked off," and Plaintiff continued "beating & talking trash to them[.]"  *Id.*

Defendant Calhoun returned and asked Plaintiff if he was "ready."  1st Recast Compl. 3.  Plaintiff, presumably believing he was about to be taken to the kiosk,

---

[3] Plaintiff did not file his First Recast Complaint on the Court's standard form as ordered.  It appears Plaintiff may not have included a copy of the Court's standard form so that he could comply with the ten-page limit set forth in the order to recast.  *See* 1st Recast Compl. 1, ECF No. 8.  As such, the Court will not penalize Plaintiff for failing to use the Court's standard form.  The Court notes, however, that further failure to comply with the Court's orders and instructions could result in the dismissal of this action.  *See* Fed. R. Civ. P. 41(b).

replied in the affirmative and turned his back so Defendant Calhoun could cuff him. *Id.* Instead of Defendant Calhoun cuffing Plaintiff, however, Defendant Asanie sprayed Plaintiff with pepper spray through the tray flap, and Defendant Calhoun closed the flap. *Id.* Plaintiff stated he was left in the cell "choking and screaming for help" for approximately 45 minutes before he was taken to medical. *Id.* Another inmate asked Defendant Asanie why he sprayed Plaintiff, and Defendant Asanie replied that Plaintiff "shouldn't have been talking shit." *Id.* Defendant Asanie later wrote Plaintiff a disciplinary report in which he contended Plaintiff spit on Defendant Asanie's hand when he and Defendant Calhoun opened the tray flap. *Id.* at 3-4. Plaintiff says he never spit on anyone. *Id.* at 4.

Plaintiff next claims that on August 18, 2024, Defendant Jackson, a correctional officer at the prison, made a number of false statements to other inmates regarding Plaintiff's sexuality and the charges against him. 1st Recast Compl. 4. Plaintiff also states Defendant Jackson served Plaintiff a food tray that contained another inmate's bodily fluids. *Id.* Plaintiff claims that these "false accusations" placed him in danger from other inmates and guards, particularly those inmates who are in gangs and "work for the guards & take hits for the guards and wardens." *Id.*

Next, Plaintiff complains about his 90-day phase review, which occurred on August 24, 2024. 1st Recast Compl. 5. Plaintiff contends he was expecting to be transferred or released to a STEP program based on representations from prison officials. *Id.* Instead, Georgia Department of Corrections ("GDC") Regional Director, Defendant Coswell, refused to let Plaintiff off lockdown because prison officials were

concerned about Plaintiff's safety.  *Id.*  More specifically, prison officials were worried that gang members might retaliate against Plaintiff because he killed a gang member who tried to attack him in his previous prison.  *Id.*  Plaintiff also complains about the various conditions he faces in the lockdown unit.  *Id.*

Plaintiff further asserts that he is "dealing with discrimination because some of the guards are doing stuff to [his] food & drinks and stealing money off [his] account & sometimes giving [his] store orders to other inmates."  1st Recast Compl. 6.  He also contends guards have given Plaintiff's mail to other inmates and allowed other inmates to log into his kiosk account.  *Id.*  Plaintiff also believes Defendant Williams, a warden at the prison, and Defendant Ford are discriminating against him because they will not let him order clothing and food packages while he is on lockdown.  *Id.* at 7.

Finally, Plaintiff contends that "some type of alien & chip has been implanted in [him] since [he has] been in prison."  1st Recast Compl. Attach. 1, at 1, ECF No. 8-1.  Plaintiff contends "Defendants the Department of Corrections, the State of Georgia, the FBI, the GBI, Valdosta State Prison, and whoever was responsible for this alien they implanted in me and my family" should be held liable for this implantation.  1st Recast Compl. 9.  Plaintiff also states "the government is using [his] name on some 3rd party assistance without [his] consent."  *Id.*; *see also* 1st Recast Compl. Attach. 1, at 1.

Plaintiff contends Defendants' actions and inaction violated his constitutional rights.  As a result of these alleged violations, Plaintiff seeks declaratory and

injunctive relief; compensatory damages, nominal damages, and punitive damages; costs; a jury trial; and "any additional relief this Court deems just, proper & equitable."  1st Recast Compl. 9-10.[4]

### III.   Plaintiff's Claims

#### A.   Claims against Georgia Department of Corrections

As an initial matter, Plaintiff names the GDC itself as a Defendant in this lawsuit.  The GDC is a state entity entitled to Eleventh Amendment immunity.  *See Stevens v. Gay*, 864 F.2d 113, 115 (11th Cir. 1989) ("The Eleventh Amendment bars [the plaintiff's § 1983] action against the Georgia Department of Corrections[.]  This Eleventh Amendment bar applies regardless of whether the plaintiff seeks money damages or prospective injunctive relief."); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989) (states and governmental entities that are considered "arms of the state" are not considered "persons" capable of being sued under § 1983).  Plaintiff's claims against the GDC must therefore be dismissed.

#### B.   Excessive Force Claims

At this early stage, Plaintiff's allegations sufficiently state excessive force claims against Defendants Calhoun and Asanie.   The Eighth Amendment's prohibition against cruel and unusual punishment forbids the "unnecessary and

---

[4]  Plaintiff also "seeks and demands to be released from prison because of this alien that's been implanted in [him]."  1st Recast Compl. 10.  Plaintiff cannot obtain a dismissal of pending charges or speedier release through a § 1983 action.  *See Preiser v. Rodriguez*, 411 U.S. 475, 487, 489 (1973).  "[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release[.]"  *Heck v. Humphrey*, 512 U.S. 477, 481 (1994).  Thus, to the extent Plaintiff seeks his release from prison as a remedy for the constitutional violations he alleges, such relief is not available in this case.

wanton infliction of pain." *Moore v. Hunter*, 847 F. App'x 694, 697 (11th Cir. 2021) (quoting *Thomas v. Bryant*, 614 F.3d 1288, 1303 (11th Cir. 2010)).  "In the prison context, an excessive force claim 'requires a two-prong showing: an objective showing of a deprivation or injury that is sufficiently serious to constitute a denial of the minimal civilized measure of life's necessities and a subjective showing that the official had a sufficiently culpable state of mind.'"  *Id.* (quoting *Thomas*, 614 F.3d at 1304).  The objective showing "is responsive to contemporary standards of decency," and thus even "a de minimis use of force is cognizable under the Eighth Amendment if it is 'repugnant to the conscience of mankind.'"  *Id.* (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010)).

To show subjective intent, the prisoner must show that a prison official applied force to a prisoner "maliciously and sadistically to cause harm" rather than "in a good faith effort to maintain or restore discipline."  *See, e.g., Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002) (internal quotation marks omitted), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)); *see also Williams v. Radford*, 64 F.4th 1185, 1195 (11th Cir. 2023).  To determine whether force was applied maliciously or sadistically to cause harm, the court considers factors which include:

> (1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them.

*Williams*, 64 F.4th at 1195 (quoting *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999)).  A prison official who does not actually participate in the use of excessive force

can also be held liable under § 1983 if he fails to intervene.  *Skrtich*, 280 F.3d at 1302 (quoting *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1441-42 (11th Cir. 1985)) (holding that "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance").

Prison officials are entitled to use some amount of force against an inmate who refuses to comply with their lawful orders, as Plaintiff did here.  *See, e.g., Danley v. Allen*, 540 F.3d 1298, 1306 (11th Cir. 2008), *overruled on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010) (noting that application of two short bursts of pepper spray to inmate who refused orders to return to his cell did not constitute excessive force).  But the facts are not sufficiently developed to allow the Court to conclude whether the amount of force Defendants Calhoun and Asanie used in this case was constitutionally excessive.  Plaintiff acknowledges that he was causing a disturbance; that Defendants Calhoun and Asanie instructed him to stop causing a disturbance; and that Plaintiff ignored those instructions, continued to beat on the door, and escalated the situation by "talking trash" to Defendants Calhoun and Asanie.  1st Recast Compl. 3.  At the same time, however, Plaintiff's allegations suggest he was sprayed only after he had calmed down and complied with Defendants' orders to turn so he could "cuff up."  *Id.*  Plaintiff also alleges he was "choking" and "screaming for help" after he was sprayed and that at least one other inmate who observed the situation thought Plaintiff had been sprayed for "no reason" and needed medical attention.  *Id.*  In addition, Plaintiff alleges Defendant Asanie

10

lied on a disciplinary report about his justification for spraying Plaintiff, suggesting that he knew the use of force was unnecessary. *Id.* at 3-4. And, even if Defendant Calhoun did not spray Plaintiff, he may be held liable if he failed to intervene while Defendant Asanie used excessive force against Plaintiff. *Skrtich*, 280 F.3d at 1302. The Court therefore cannot say, at this stage, that Plaintiff's excessive force claims are frivolous. These claims shall proceed against Defendants Calhoun and Asanie.

   C.   Eighth Amendment Medical Treatment Claims

   Plaintiff's allegations could also give rise to a claim that Defendants Calhoun and Asanie failed to provide him with adequate medical treatment for the effects of the pepper spray. To state a claim for deliberate indifference to his medical needs, a plaintiff must allege facts sufficient to establish: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009); *see also Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (holding that deliberate indifference to serious medical needs amounts to cruel and unusual punishment that violates the Eighth Amendment).

   The first element is objective and requires a plaintiff to set forth a "serious medical need," which is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow*, 320 F.3d at 1243 (internal quotation marks omitted). A serious medical need can also arise if "a delay in treating the need worsens the condition." *Mann,* 588 F.3d at 1307. "In either case, 'the medical need

must be one that, if left unattended, poses a substantial risk of serious harm.'" *Id.* (quoting *Farrow*, 320 F.3d at 1243).

To establish the second element—deliberate indifference—a plaintiff must plausibly allege that the defendant: (1) "was subjectively aware that the inmate was at risk of serious harm"; (2) "disregarded that risk"; and (3) "acted with 'subjective recklessness as used in the criminal law.'" *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (quoting *Farmer*, 411 U.S. at 839). Subjective awareness requires that the defendant "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (quoting *Farmer*, 511 U.S. at 837). "'[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. Each individual defendant must be judged separately and on the basis of what that person kn[ew].'" *Dang ex rel. Dang v. Sheriff, Seminole Cnty. Fla.*, 871 F.3d 1272, 1280 (11th Cir. 2017) (alterations in original) (quoting *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008)). To establish that a particular "defendant acted with 'subjective recklessness as used in the criminal law'" the plaintiff must allege "that the defendant was subjectively aware that his own conduct put the plaintiff at substantial risk of serious harm." *Wade*, 106 F.4th at 1255.

The final element simply requires "that a defendant have a causal connection to the constitutional harm." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007). "[A]s with any tort claim, [plaintiff] must show that the injury was caused by

the defendant's wrongful conduct." *Id.* at 1326. "Causation, of course, can be shown by personal participation in the constitutional violation." *Id.* at 1327.

In this case, Plaintiff alleges that Defendants Calhoun and Asanie sprayed Plaintiff, closed his tray flap, and left him in his cell for at least 45 minutes. 1st Recast Compl. 3. Plaintiff states he was "choking," "screaming for help," "could'nt breath [sic]," and "thought [he] was gonna die," particularly because he suffers from asthma. *Id.* at 3, 8. Plaintiff also said another inmate tried to intervene to get medical attention for Plaintiff. *See id.* at 3. Again, the Court cannot say that these allegations are necessarily frivolous. *See, e.g.*, *Danley*, 540 F.3d at 1311 (holding that "the effects of prolonged exposure to pepper spray with inadequate decontamination and poor ventilation" can amount to a serious medical need); *see also McNeeley v. Wilson*, 649 F. App'x 717, 723 (11th Cir. 2016) (holding that prison officials "were on notice that delaying a proper decontamination for over twenty minutes despite complaints about the effects of pepper spray could result in a clearly established constitutional violation"). As such, Plaintiff's medical treatment claims against Defendants Calhoun and Asanie shall also proceed for further factual development.

D.    Supervisory Liability Claims

Plaintiff also named several supervisory prison officials as Defendants in this case: Defendants Coswell, Williams, Turner, and Ford. 1st Recast Compl. 1. To the extent that Plaintiff is claiming that any of these supervisory officials might be liable for the conduct of Defendants Calhoun and Asanie, Plaintiff fails to state an actionable claim. It is well-settled in the Eleventh Circuit that supervisory officials

are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability. *See, e.g., Christmas v. Nabors*, 76 F.4th 1320, 1330 (11th Cir. 2023). Rather, a supervisor can only be held liable under § 1983 "when he personally participates in those acts or when a causal connection exists between his actions and the constitutional deprivation." *Id.* A causal connection can be established if

> (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so; (2) the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Hendrix v Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (internal quotation marks omitted). "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." *Id.* (quoting *Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1266 (11th Cir. 2010)).

Plaintiff fails to meet this rigorous standard in this case. He has not alleged any facts establishing a history of similar issues or that any supervisory official maintained any improper customs or policies. *See Piazza v. Jefferson Cnty.*, 923 F.3d 947, 958 (11th Cir. 2019) (prisoner failed to state supervisory liability claim where he failed to "point to other instances" of unconstitutional conduct or allege any facts concerning the policies or customs that led to constitutional violations). Plaintiff also fails to allege any facts that would indicate that any supervisory official directed his subordinates to act unlawfully or knew they were doing so and failed to correct their

14

behavior.  Plaintiff thus fails to state a supervisory liability claim against any supervisory officials named as Defendants in this case, and all such claims should be dismissed without prejudice.

    E.   <u>Unrelated Claims</u>

Finally, Plaintiff's remaining claims against all remaining Defendants should be dismissed without prejudice because they are not sufficiently related to Plaintiff's claims against Defendants Calhoun and Asanie.  The Federal Rules of Civil Procedure permit a plaintiff to join related claims and defendants in a single complaint.  To properly join defendants under Federal Rule of Civil Procedure 20(a)(2), the plaintiff must establish that he is asserting a right to relief against them "jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," <u>and</u> that "any question of law or fact common to all defendants will arise in the action."

The Eleventh Circuit applies the "logical relationship" test to determine whether claims arise from the same transaction or occurrence for joinder purposes. *See, e.g., Smith v. Trans-Siberian Orchestra*, 728 F. Supp. 2d 1315, 1319 (M.D. Fla. 2010) (citing *Republic Health Corp. v. Lifemark Hosp. Corp. of Fla.*, 755 F.2d 1453, 1455 (11th Cir. 1985)).[5]  "Under this test, there is a logical relationship when the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in

---

[5] The standard for whether claims arise from the same transaction or occurrence for Rule 20 purposes is the same as that used for compulsory counterclaims under Federal Rule of Civil Procedure 13.  *See Smith*, 728 F. Supp. 2d at 1319.

the defendant." *Republic Health Corp.*, 755 F.2d at 1455 (internal quotation marks omitted). And more than just a minimal connection between a series of different transactions or occurrences must exist before joinder is proper. *Skillern v. Ga. Dep't of Corr. Comm'r*, 379 F. App'x 859, 860 (11th Cir. 2010) (holding that joinder was improper where "actions of the defendants . . . appear[ed] to be separate incidents . . . occurring on different dates" and the only "connection between the people and events [the prisoner] described" was that the actions "showed indifference to his failing health"). In exercising its discretion regarding joinder, the Court should "provide a reasoned analysis that comports with the requirements of the Rule" and "based on the specific fact pattern presented by the plaintiffs and claims before the court." *Hagan v. Rogers*, 570 F.3d 146, 157 (3d Cir. 2009). The Court's discretion is also informed by the Prison Litigation Reform Act and its goals of preventing unwieldy litigation, ensuring the payment of filing fees, and limiting prisoners' ability to bring frivolous cases. *See, e.g., George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

Here, Plaintiff claims that: (1) Defendant Jackson spread rumors about Plaintiff and gave him meal trays containing a foreign substance, 1st Recast Compl. 4; (2) Defendants Coswell, Williams, and Ford improperly kept Plaintiff on lockdown, *id.* at 5-6, 7; (3) the conditions of confinement on lockdown are unconstitutional, *id.* at 6; (4) unnamed guards are discriminating against him by tampering with his food and drinks, stealing his money, and giving his store orders to other inmates, *id.*; (5) Defendants Williams and Ford are discriminating against him by refusing to allow him to order clothing and food packages in lockdown, *id.* at 7; (6) Defendant Jones

16

has given Plaintiff's mail to other inmates, *id.* at 8; (7) Defendant Turner threatened Plaintiff "while the IRT beat [him] up in handcuffs," 1st Recast Compl. 8; (8) Defendant Foster and other members of the IRT assaulted Plaintiff while he was in handcuffs and lied in the resulting disciplinary report, *id.*; and (9) the GDC, the State of Georgia, the FBI, the GBI, and Valdosta State Prison implanted an alien and/or a "chip" in Plaintiff, *id.* at 9. These claims bear no relationship to Plaintiff's claims that Defendants Calhoun and Asanie used excessive force against Plaintiff and failed to provide him with adequate medical treatment afterwards.

Because joinder is inappropriate, and because it does not appear that the statute of limitations would bar Plaintiff from refiling his remaining claims if he acts promptly to do so, these claims should be dismissed without prejudice. *See* Fed. R. Civ. P. 21; *see also DirecTV, Inc. v. Leto*, 467 F.3d 842, 844-45 (3d Cir. 2006) (holding that "district judges have discretion to remedy misjoinders either by severing claims or dismissing them without prejudice").

## CONCLUSION

For the foregoing reasons, Plaintiff's renewed motion to proceed *in forma pauperis* (ECF No. 9) is **GRANTED**, but his motion for appointed counsel (ECF No. 12) is **DENIED.** Plaintiff's claims that Calhoun and Asanie used excessive force against him and were deliberately indifferent to his serious medical needs may proceed for further factual development, but it is **RECOMMENDED** that his remaining claims be **DISMISSED without prejudice.**

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Marc T. Treadwell, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation.  Any objection is limited in length to **TWENTY (20) PAGES**.  *See* M.D. Ga. L.R. 7.4.  The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.  Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.  *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional violation claims against Defendants Calhoun and Asanie, it is accordingly **ORDERED** that service be made on those Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act.  Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.  Failure to

promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. All Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff.  The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.  Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.  The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian.  **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court. This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party shall be required to respond to any such requests which exceed these limitations.

### REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED** this 18th day of February, 2025.

 s/ *Amelia G. Helmick*
UNITED STATES MAGISTRATE JUDGE